**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **FIRESTONE COUNTRY CLUB** | ) | |
| **(Akron Management, LLC, FKA Akron** | ) | |
| **Management Corp.)** | ) | |
| **452 East Warner Road** | ) | **CASE NO. _____** |
| **Akron, OH 44319,** | ) | |
| | ) | |
| **and** | ) | **JUDGE _____** |
| | ) | |
| **OK AKRON CLUB MANAGEMENT CORP.,** | ) | |
| **(Successor by Merger to Akron Club** | ) | |
| **Management Corp.)** | ) | **COMPLAINT FOR INJUNCTIVE** |
| **5221 N. O'Connor Blvd., Suite 300** | ) | **AND OTHER RELIEF** |
| **Irving, Texas 75039,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **APRIL SOUND MANAGEMENT, LLC** | ) | |
| **(FKA April Sound Management Corp.)** | ) | |
| **5221 N. O'Connor Blvd., Suite 300** | ) | |
| **Irving, Texas 75039,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **OK ATLANTA CITY CLUB, INC.** | ) | |
| **(Successor by Merger to Atlanta City Club, Inc.)** | ) | |
| **5221 N. O'Connor Blvd., Suite 300** | ) | |
| **Irving, Texas 75039,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **OK ATRIUM CLUB, INC.** | ) | |
| **(Successor by Merger to Atrium Club, Inc.)** | ) | |
| **5221 N. O'Connor Blvd., Suite 300** | ) | |
| **Irving, Texas 75039,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **OK SUMMIT CLUB INC.** | ) | |
| **(Successor by Merger to Summit Club, Inc.** | ) | |
| **(Bankers Club of Cincinnati))** | ) | |
| **5221 N. O'Connor Blvd., Suite 300** | ) | |

1

Irving, Texas 75039,                                    )
and                                                     )
                                                        )
**BAY OAKS COUNTRY CLUB, LLC**                          )
**(FKA Bay Oaks Country Club, Inc.)**                   )
**14545 Bay Oaks Blvd.**                                )
**Houston, TX 77059,**                                  )
                                                        )
and                                                     )
                                                        )
**CLUBCORP BRAEMAR COUNTRY CLUB,**                      )
**INC.**                                                )
**4001 Reseda Blvd.**                                   )
**Tarzana, CA 91356,**                                  )
                                                        )
and                                                     )
                                                        )
**BROOKHAVEN COUNTRY CLUB, LLC**                        )
**(FKA Brookhaven Country Club, Inc.)**                 )
**3333 Golfing Green Dr.**                              )
**Farmers Branch, TX 75234,**                           )
                                                        )
and                                                     )
                                                        )
**OK BECKETT RIDGE COUNTRY CLUB,**                      )
**INC.**                                                )
**(Successor by Merger to Beckett Ridge Country**      )
**Club, Inc.)**                                         )
**5221 N. O'Connor Blvd., Suite 300**                   )
**Irving, Texas 75039,**                                )
                                                        )
and                                                     )
                                                        )
**CLUBCORP CANYON CREST COUNTRY**                       )
**CLUB, INC.**                                          )
**3030 LBJ Freeway, Suite 600,**                        )
**Dallas, Texas 75234,**                                )
                                                        )
and                                                     )
                                                        )
**CAPITAL CITY CLUB OF MONTGOMERY,**                    )
**LLC**                                                 )
**(FKA Capital City Club of Montgomery, Inc.)**         )
**5221 N. O'Connor Blvd., Suite 300**                   )
**Irving, Texas 75039,**                                )
                                                        )

and                                                    )
                                                       )
**PRE 9.23.07 OWNER/OPERATOR OF**                      )
**CAPITAL CLUB, INC.**                                 )
**(Successor by Merger to Capital Club, Inc.**         )
**(Ohio))**                                            )
**5221 N. O'Connor Blvd., Suite 300**                  )
**Irving, Texas 75039,**                               )
                                                       )
and                                                    )
                                                       )
**PRE 12-15-04 OPERATOR OF CAPITAL**                   )
**CLUB, INC.**                                         )
**(Successor by merger of CAPITAL CLUB, INC.**         )
**(RICHMOND))**                                        )
**5221 N. O'Connor Blvd., Suite 300**                  )
**Irving, Texas 75039,**                               )
                                                       )
and                                                    )
                                                       )
**CASCADE ATHLETIC CLUB, INC.**                        )
**5221 N. O'Connor Blvd., Suite 300**                  )
**Irving, Texas 75039,**                               )
                                                       )
and                                                    )
                                                       )
**OK CCC HOLDING, INC.**                               )
**(Successor by Merger to CCC Holding, Inc.)**         )
**5221 N. O'Connor Blvd., Suite 300**                  )
**Irving, Texas 75039,**                               )
                                                       )
and                                                    )
                                                       )
**OK CENTURY II CLUB, INC.**                           )
**(Successor by Merger to Century II Club, Inc.)**     )
**5221 N. O'Connor Blvd., Suite 300**                  )
**Irving, Texas 75039,**                               )
                                                       )
and                                                    )
                                                       )
**OK CIPANGO MANAGEMENT**                              )
**CORPORATION**                                        )
**(Successor by Merger to Cipango Management**         )
**Corporation)**                                       )
**5221 N. O'Connor Blvd., Suite 300**                  )
**Irving, Texas 75039,**                               )

and )
)
**CITRUS CLUB, INC.** )
**255 S. Orange Ave., Suite 1800** )
**Orlando, FL 32801,** )
)
and )
)
**OK CITY CLUB OF ROCKFORD, INC.** )
**(Successor by Merger to City Club of Rockford,** )
**Inc.)** )
**5221 N. O'Connor Blvd., Suite 300** )
**Irving, Texas 75039,** )
)
and )
)
**CITY CLUB OF WASHINGTON, INC.** )
**555 13th St. NW Columbia Square** )
**Washington, DC 20004,** )
)
and )
)
**OK CLAYTON CLUB MANAGEMENT** )
**CORP.** )
**(Successor by merger to Clayton Club** )
**Management Corp.)** )
**5221 N. O'Connor Blvd., Suite 300** )
**Irving, Texas 75039,** )
)
and )
)
**ClubCorp Holdings, Inc.,** )
**5221 N. O'Connor Blvd., Suite 300** )
**Irving, Texas 75039,** )
)
and )
)
**CLUB LE CONTE, LLC** )
**(FKA Club Le Conte, Inc.)** )
**5221 N. O'Connor Blvd., Suite 300** )
**Irving, Texas 75039,** )
)
and )
)
)

4

**OK COAST CLUB MANAGEMENT CORP.**
**(Successor by Merger to Coast Club**
**Management Corp.)**
**5221 N. O'Connor Blvd., Suite 300**
**Irving, Texas 75039,**

**and**

**THE COMMERCE CLUB, INC.**
**5221 N. O'Connor Blvd., Suite 300**
**Irving, Texas 75039,**

**and**

**COUNTRYSIDE COUNTRY CLUB, INC.**
**3001 Countryside Blvd.**
**Clearwater, FL 33761,**

**and**

**CRESCENT CLUB**
**5221 N. O'Connor Blvd., Suite 300**
**Irving, Texas 75039,**

**and**

**OK CREVE COEUR MGMT CORP.**
**(Successor by Merger to Creve Coeur Mgmt**
**Corp.)**
**5221 N. O'Connor Blvd., Suite 300**
**Irving, Texas 75039,**

**and**

**CLUBCORP CROW CANYON**
**MANAGEMENT CORP.**
**5221 N. O'Connor Blvd., Suite 300**
**Irving, Texas 75039,**

**and**

**DAYTON RACQUET CLUB, LLC**
**(FKA Dayton Racquet Club, Inc.)**
**5221 N. O'Connor Blvd., Suite 300**
**Irving, Texas 75039,**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

5

and )
)
)
**OK DUMFRIES CLUB, INC.** )
**(Successor by Merger to Dumfries Club, Inc.)** )
**5221 N. O'Connor Blvd., Suite 300** )
**Irving, Texas 75039,** )
)
and )
)
**FIRST CITY CLUB MANAGEMENT, LLC** )
**(FKA First City Club Management, Inc.)** )
**5221 N. O'Connor Blvd., Suite 300** )
**Irving, Texas 75039,** )
)
and )
)
**OK UNIVERSITY CLUB OF WEST PALM** )
**BEACH, INC.** )
**(Successor by Merger to University Club of** )
**West Palm Beach, Inc. (Governors Club))** )
**5221 N. O'Connor Blvd., Suite 300** )
**Irving, Texas 75039,** )
)
and )
)
**PRE 12-21-05 OPERATOR OF THE GREENS** )
**GOLF & RACQUET CLUB, INC.** )
**(Successor by Merger to The Greens Gold &** )
**Racquet Club, Inc.)** )
**5221 N. O'Connor Blvd., Suite 300** )
**Irving, Texas 75039,** )
)
and )
)
**HACKBERRY CREEK COUNTRY CLUB,** )
**LLC** )
**(FKA Hackberry Creek Country Club, Inc.)** )
**5221 N. O'Connor Blvd., Suite 300** )
**Irving, Texas 75039,** )
)
and )
)
)
)
)

6

**OK PRE 12-30-98 OPERATOR OF HALIFAX**
**CLUB, INC.**
**(Successor by Merger to Halifax Club, Inc.)**
**5221 N. O'Connor Blvd., Suite 300**
**Irving, Texas 75039,**

**and**

**HOUSTON CITY CLUB, LLC**
**(FKA Houston City Club, Inc.)**
**5221 N. O'Connor Blvd., Suite 300**
**Irving, Texas 75039,**

**and**

**OK PRE 5-31-01 OPERATOR OF**
**INVERRARY COUNTRY CLUB, INC.,**
**(Successor by Merger to Inverrary Country**
**Club, Inc.)**
**5221 N. O'Connor Blvd., Suite 300**
**Irving, Texas 75039,**

**and**

**OK JEFFERSON CLUB MANAGEMENT**
**CORPORATION**
**(Successor by Merger to Jefferson Club**
**Management Corp.)**
**5221 N. O'Connor Blvd., Suite 300**
**Irving, Texas 75039,**

**and**

**OK PRE 09-22-04 OPERATOR OF**
**JEFFERSON CLUB, INC.**
**(Successor by Merger to Jefferson Club, Inc.)**
**5221 N. O'Connor Blvd., Suite 300**
**Irving, Texas 75039,**

**and**

**KINGWOOD COUNTRY CLUB, LLC**
**(FKA Kingwood Country Club, Inc.)**
**1700 Lake Kingwood Trail**
**Kingwood, TX 77339,**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

|  | ) |
| and | ) |
|  | ) |
| **KNOLLWOOD COUNTRY CLUB, LLC** | ) |
| **(FKA Knollwood Country Club, Inc.)** | ) |
| **16633 Baywood Lane** | ) |
| **Granger, IN 46530,** | ) |
|  | ) |
| and | ) |
|  | ) |
| **OK PRE 12-23-99 OWNER LAFAYETTE** | ) |
| **CLUB, INC.** | ) |
| **(Successor by Merger to Lafayette Club, Inc.)** | ) |
| **5215 N O'Connor Blvd., Suite 2600** | ) |
| **Irving, TX 75039,** | ) |
|  | ) |
| and | ) |
|  | ) |
| **LA CIMA CLUB, INC.** | ) |
| **5215 N O'Connor Blvd., Suite 2600** | ) |
| **Irving, TX 75039,** | ) |
|  | ) |
| and | ) |
|  | ) |
| **OK LAKES CLUB, INC.** | ) |
| **(Successor by merger to Lakes Club, Inc. AZ)** | ) |
| **5215 N. O'Connor Blvd., Suite 2600** | ) |
| **Irving, TX 75039,** | ) |
|  | ) |
| and | ) |
|  | ) |
| **OK LAKES CLUB, INC.** | ) |
| **(Successor by Merger to Lakes Club, Inc.** | ) |
| **Bellevue)** | ) |
| **5215 N. O'Connor Blvd., Suite 2600** | ) |
| **Irving, TX 75039,** | ) |
|  | ) |
| and | ) |
|  | ) |
| **THE LANCERS CLUB, INC.** | ) |
| **5215 N. O'Connor Blvd., Suite 2600** | ) |
| **Irving, TX 75039,** | ) |
|  | ) |
| and | ) |
|  | ) |
|  | ) |

**OK LOS GATOS TENNIS CLUB, INC.**   )
**(Successor by Merger to Los Gatos Tennis Club,**   )
**Inc.)**   )
**5215 N. O'Connor Blvd., Suite 2600**   )
**Irving, TX 75039,**   )
   )
**and**   )
   )
**OK PRE 2-28-01 OPERATOR OF THE**   )
**MEADOW CLUB, INC.**   )
**(Successor by Merger to The Meadow Club,**   )
**Inc.)**   )
**5215 N. O'Connor Blvd., Suite 2600**   )
**Irving, TX 75039,**   )
   )
**and**   )
   )
**METROPOLITAN CLUB OF CHICAGO, INC.**   )
**233 S. Wacker Drive**   )
**Sears Tower 67th Floor**   )
**Chicago, IL 60606,**   )
   )
**and**   )
   )
**OK MONROE STREET CITY CLUB, INC.**   )
**(Successor by Merger to Monroe Street City**   )
**Club, Inc.)**   )
**5215 N. O'Connor Blvd., Suite 2600**   )
**Irving, TX 75039,**   )
   )
**and**   )
   )
**NORTHWOOD MANAGEMENT, LLC**   )
**(FKA Northwood Management Corp.)**   )
**5215 N. O'Connor Blvd., Suite 2600**   )
**Irving, TX 75039,**   )
   )
**and**   )
   )
**OK OAK MEADOW MANAGEMENT**   )
**CORPORATION**   )
**(Sucessor by Merger to Oak Meadow**   )
**Management Corporation)**   )
**5215 N. O'Connor Blvd., Suite 2600**   )
**Irving, TX 75039,**   )

and          )

)

**MEMPHIS CITY CLUB, LLC**    )
**(FKA Memphis City Club, Inc.)**  )
**5215 N. O'Connor Blvd., Suite 2600** )
**Irving, TX 75039,**       )

)

and          )

)

**OK PRE 8-24-00 OPERATOR OF PEBBLE** )
**CREEK COUNTRY CLUB OF GREENVILLE,** )
**INC.**            )
**(Successor by Merger to Pebble Creek Country** )
**Club of Greenville, Inc.)**    )
**5215 N. O'Connor Blvd., Suite 2600** )
**Irving, TX 75039,**       )

)

and          )

)

**OK PHAROHS MANAGEMENT CORP.**  )
**(Successor by Merger to Pharohs Management** )
**Corp.)**          )
**5215 N. O'Connor Blvd., Suite 2600** )
**Irving, TX 75039,**       )

)

and          )

)

**PIEDMONT CLUB, LLC**    )
**(FKA Piedmont Club, Inc.)**   )
**5215 N. O'Connor Blvd., Suite 2600** )
**Irving, TX 75039,**       )

)

and          )

)

**OK PLAZA ATHLETIC CLUB, INC.**  )
**(Successor by Merger of Plaza Athletic Club,** )
**Inc.)**          )
**5215 N. O'Connor Blvd., Suite 2600** )
**Irving, TX 75039,**       )

)

and          )

)

)

)

)

**OK THE PLAZA CLUB OF PHOENIX, INC.**
**(Successor by Merger to The Plaza Club of**
**Phoenix, Inc.)**
**5215 N. O'Connor Blvd., Suite 2600**
**Irving, TX 75039,**

**and**

**THE PLAZA CLUB OF SAN ANTONIO, INC.**
**(FKA The Plaza Club of San Antonio, Inc.)**
**5215 N. O'Connor Blvd., Suite 2600**
**Irving, TX 75039,**

**and**

**OK PLAZA CLUB OF TUSCON, INC.**
**(Successor by Merger to Plaza Club of Tuscon,**
**Inc.)**
**5215 N. O'Connor Blvd., Suite 2600**
**Irving, TX 75039,**

**and**

**OK PLAZA CLUB-TYLER, INC.**
**(Successor by Merger to Plaza Club Tyler, Inc.)**
**5215 N. O'Connor Blvd., Suite 2600**
**Irving, TX 75039,**

**and**

**OK THE PLAZA CLUB-HAWAII, INC.**
**(Successor by Merger to The Plaza Club-**
**Hawaii, Ltd.)**
**5215 N. O'Connor Blvd., Suite 2600**
**Irving, TX 75039,**

**and**

**CLUBCORP PORTER VALLEY COUNTRY**
**CLUB, INC.**
**19216 Singing Hills Dr.**
**Northridge, CA 91326,**

**and**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

11

**OK PRE 2-1-95 OPERATOR COMPANY OF** )
**LANDMARK ATHLETIC CLUB** )
**(Successor by Merger to Pre 2-1-95 Operator** )
**Company of Landmark Athletic Club)** )
**5215 N. O'Connor Blvd., Suite 2600** )
**Irving, TX 75039,** )
)
**and** )
)
**OK PRE 7-4-96 OPERATOR OF RODNEY** )
**SQUARE CLUB, INC.** )
**(Successor by Merger to Pre 7-4-96 Operator of** )
**Rodney Square Club, Inc.)** )
**5215 N. O'Connor Blvd., Suite 2600** )
**Irving, TX 75039,** )
)
**and** )
)
**OK PRE 06-15-04 OPERATOR OF THE** )
**RAVINIA CLUB, INC.** )
**(Successor by Merger of The Ravinia Club, Inc.)** )
**5215 N. O'Connor Blvd., Suite 2600** )
**Irving, TX 75039,** )
)
**and** )
)
**OK THE RELAY HOUSE CORPORATION** )
**(Successor by Merger to The Relay House** )
**Corporation)** )
**5215 N. O'Connor Blvd., Suite 2600** )
**Irving, TX 75039,** )
)
**and** )
)
**RENAISSANCE CLUB, INC. (MICHIGAN)** )
**5215 N. O'Connor Blvd., Suite 2600** )
**Irving, TX 75039,** )
)
**and** )
)
**RICHARDSON COUNTRY CLUB CORP** )
**625 West Lookout Dr.** )
**Richardson, TX 75080,** )
)
**and** )
)

OK RIVER NORTH MANAGEMENT CORP. )
(Successor by Merger to River North )
Management Corp.) )
5215 N. O'Connor Blvd., Suite 2600 )
Irving, TX 75039, )
　 )
and )
　 )
RIVERS CLUB, LLC )
Rivers Club - Pittsburgh )
301 Grant Street, Suite 411 )
PITTSBURGH, PA 15219, )
　 )
and )
　 )
OK SHANANDOAH MANAGEMENT CORP. )
(Successor by Merger to Shanandoah )
Management Corp.) )
5215 N. O'Connor Blvd., Suite 2600 )
Irving, TX 75039, )
　 )
and )
　 )
CLUBCORP SPRING VALLEY LAKE )
COUNTRY CLUB, INC. )
5215 N. O'Connor Blvd., Suite 2600 )
Irving, TX 75039, )
　 )
and )
　 )
SKYLINE CLUB, LLC )
(FKA Skyline Club, Inc.) )
1 American Square, 36th Floor )
Indianapolis, IN 46282, )
　 )
and )
　 )
OK PRE-11-28-00 OPERATOR OF THE )
SKYLINE CLUB, INC. )
(Successor by Merger to The Skyline Club, Inc. )
(Michigan)) )
5215 N. O'Connor Blvd., Suite 2600 )
Irving, TX 75039, )
　 )
and )
　 )

**OK SNEE FARM COUNTRY CLUB, INC.** )
**(Successor by Merger to Snee Farm Country** )
**Club, Inc.)** )
**5215 N. O'Connor Blvd., Suite 2600** )
**Irving, TX 75039,** )
)
**and** )
)
**OK SWEETWATER COUNTRY CLUB, INC.** )
**(Successor by Merger to Sweetwater Country** )
**Club, Inc.)** )
**5215 N O'Connor Blvd., Suite 2600** )
**Irving, TX 75039,** )
)
**and** )
)
**THE DOWNTOWN CLUB, INC.** )
**340 W. Dallas St.** )
**Houston, TX 77002,** )
)
**and** )
)
**THE RIVERS CLUB, INC. (IL)** )
**5215 N. O'Connor Blvd., Suite 2600** )
**Irving, TX 75039,** )
)
**and** )
)
**OK TOPS'L CLUB, INC.** )
**(Successor by Merger to Tops'l Club, Inc.)** )
**5215 N. O'Connor Blvd., Suite 2600** )
**Irving, TX 75039,** )
)
**and** )
)
**OK TOWER CLUB OF BEAUMONT, INC.** )
**(Successor by Merger to Tower Club of** )
**Beaumont, Inc.)** )
**5215 N. O'Connor Blvd., Suite 2600** )
**Irving, TX 75039,** )
)
**and** )
)
)
)
)

14

**OK PRE 12-31-04 OPERATOR OF TOWER** )
**CLUB, INC.** )
**(Successor by Merger to Tower Club, Inc. (NC))** )
**5215 N. O'Connor Blvd., Suite 2600** )
**Irving, TX 75039,** )
)
**and** )
)
**TOWER CLUB OF DALLAS, INC.** )
**1601 Elm St** )
**Suite 4800** )
**Dallas, TX 75201,** )
)
**and** )
)
**TOWER CLUB, INC. (FL)** )
**100 SE Third Avenue** )
**One Financial Plaza, Regions Bank Bldg., 28th** )
**Floor** )
**Fort Lauderdale, FL 33394,** )
)
**and** )
)
**TOWN POINT CLUB, LLC** )
**(FKA Tower Point Club, Inc.)** )
**5215 N. O'Connor Blvd., Suite 2600** )
**Irving, TX 75039,** )
)
**and** )
)
**OK PRE 1986 OPERATOR OF TREASURE** )
**ISLAND TENNIS & YACHT CLUB, INC.** )
**(Successor by Merger to Treasure Island Tennis** )
**& Yacht Club, Inc.)** )
**5215 N. O'Connor Blvd., Suite 2600** )
**Irving, TX 75039,** )
)
**and** )
)
**OK TWO THOUSAND ONE BRYAN TOWER** )
**CLUB, INC.** )
**(Successor by Merger to Two Thousand One** )
**Bryan Tower Club, Inc.)** )
**5215 N. O'Connor Blvd., Suite 2600** )
**Irving, TX 75039,** )
)

and )
)
THE UNIVERSITY CLUB, INC. )
(University Club of Jackson) )
5215 N. O'Connor Blvd., Suite 2600 )
Irving, TX 75039, )
)
and )
)
OK UNIVERSITY CLUB OF DALLAS, INC. )
(Successor by Merger to University Club of )
Dallas, Inc.) )
5215 N. O'Connor Blvd., Suite 2600 )
Irving, TX 75039, )
)
and )
)
OK UNIVERSITY CLUB OF HOUSTON, INC. )
(Successor by Merger of University Club of )
Houston, Inc.) )
5215 N. O'Connor Blvd., Suite 2600 )
Irving, TX 75039, )
)
and )
)
THE UNIVERSITY CLUB, LLC )
(FKA The University Club, Inc. (University Club of )
Jacksonsville) )
5215 N. O'Connor Blvd., Suite 2600 )
Irving, TX 75039, )
)
and )
)
OK PRE 5-3-00 OPERATOR OF THE )
WALDEN CLUB, INC. )
(Successor by Merger to Walden Club, Inc.) )
5215 N. O'Connor Blvd., Suite 2600 )
Irving, TX 75039, )
)
and )
)
WALNUT CREEK MANAGEMENT LLC )
(FKA Walnut Creek Management, Corp.) )
1151 Country Club Dr. )
Mansfield, TX 76063, )
)
and

**WESTLAKE CITY CLUB, INC.**                     )
**5215 N. O'Connor Blvd., Suite 2600**           )
**Irving, TX 75039,**                            )
                                                 )
**and**                                          )
                                                 )
**WILDFLOWER COUNTRY CLUB, LLC**                 )
**(FKA Wildflower Country Club, Inc.)**          )
**4902 Wildflower Ln.**                          )
**Temple, TX 76502,**                            )
                                                 )
    **Plaintiffs,**          )
                                                 )
  **v.**                               )
                                                 )
**OHIO DEPARTMENT OF COMMERCE,**                 )
**DIVISION OF UNCLAIMED FUNDS**                  )
**77 South High Street, 23rd Floor**             )
**Columbus, OH 43215,**                          )
                                                 )
**and**                                          )
                                                 )
**AKIL HARDY, Superintendent**                   )
**Ohio Department of Commerce, Division of**     )
**Unclaimed Funds**                              )
**77 South High Street, 20th Floor**             )
**Columbus, OH 43215,**                          )
                                                 )
**and**                                          )
                                                 )
**KELLI E. LISTER, Legal Counsel**               )
**Ohio Department of Commerce, Division of**     )
**Unclaimed Funds**                              )
**77 South High Street, 20th Floor**             )
**Columbus, OH 43215,**                          )
                                                 )
**and**                                          )
                                                 )
**GEORGE GLADDEN, Compliance Manager**           )
**Ohio Department of Commerce, Division of**     )
**Unclaimed Funds**                              )
**77 South High Street, 20th Floor**             )
**Columbus, OH 43215,**                          )
                                                 )
**and**                                          )

|                                                      |     |
|------------------------------------------------------|-----|
|                                                      | )   |
| **AUDIT SERVICES U.S., LLC**                         | )   |
| **Corporation Service Company, Registered**          | )   |
| **Agent**                                            | )   |
| **1201 Hays Street**                                 | )   |
| **Tallahassee, FL 32301,**                           | )   |
|                                                      | )   |
| **and**                                              | )   |
|                                                      | )   |
| **JEREMY D. KATZ, Partner**                          | )   |
| **Audit Services U.S., LLC**                         | )   |
| **370 Lexington Avenue, #707**                       | )   |
| **New York, NY 10017,**                              | )   |
|                                                      | )   |
| **Defendants.**                                      | )   |

## **INTRODUCTION**

Plaintiff ClubCorp Holdings, Inc. ("ClubCorp"), and its related entities identified in the case caption (ClubCorp and its related entities are collectively referred to herein as the "Plaintiffs"), bring this Complaint for Injunctive and Other Relief (the "Complaint") against Defendants Ohio Department of Commerce, Division of Unclaimed Funds (the "Division"); Akil Hardy, Superintendent of the Division; Kelli E. Lister, Legal Counsel for the Division; George Gladden, Compliance Manager for the Division, Audit Services U.S., LLC ("ASUS"); and Jeremy D. Katz ("Katz"), for an order enjoining Defendants from further violating Plaintiffs' due process rights under the Fourteenth Amendment of the United States Constitution.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall . . . deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1. The Fifth Amendment grants Plaintiffs a fundamental property right. U.S. Const. amend. V.

 "The essential requirement of due process is notice and an opportunity to respond." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) ("*Cleveland Board of Education*"). Based on U.S. Supreme Court precedents in cases involving a property right, any person faced with the possibility of a taking has a procedural due process right to understand the basis for a government order before a hearing that deprives them of a property right. *See, e.g., Taylor v. Yee*, 136 S.Ct. 929 ("The Due Process Clause requires States to give adequate notice before seizing private property.") citing *Mullane v. Ventral Hanover Bank & Trust Co*., 339 U.S. 306, 313 (1955).

After conducting an audit of Plaintiffs' books and records (the "Audit"), Defendants demand that Plaintiffs remit $7,997,377.76 to the State of Ohio. Defendants contend that these funds are unclaimed funds under the Ohio Unclaimed Funds Act, codified in Chapter 169 of the Ohio Revised Code, and Ohio Administrative Code Chapter 1301:10 (collectively, the "UFA"). Defendants have refused to provide Plaintiffs with the factual and legal bases for their conclusion that these funds must be remitted to the State. By refusing to provide documents that have been repeatedly requested, and by refusing Plaintiffs' request to depose Katz concerning the bases for his conclusions in the Audit, Defendants have violated Plaintiffs' Fifth Amendment rights and Fourteenth Amendment due process rights.

Plaintiffs have consistently asserted that they do not hold any unclaimed funds. On May 6, 2024, Plaintiffs appealed the Audit findings and Defendants' demand that funds be remitted. In their Notice of Appeal, Plaintiffs assert that Defendants' actions under the UFA violate Plaintiffs' procedural and substantive due process rights under the Ohio Constitution, the U.S. Constitution, and the Fifth Amendment. Plaintiffs are entitled to an administrative hearing under Ohio law (*see* Ohio R.C. 119.06 and OAC 1301:10-3-04(K)). The administrative appeal process and the hearing must be conducted consistently with Plaintiffs' procedural due process rights under the Fourteenth Amendment as set forth in precedents of the U.S. Supreme Court.

Plaintiffs seek relief from this Court because, as a matter of the U.S. Constitution, they are entitled to understand the basis for Defendants' findings and demand for payment before appearing at an administrative hearing. Plaintiffs' procedural due process rights include the right to discover the relevant documents and depose Katz. Otherwise, Plaintiffs will not be able to prepare their presentation at the hearing or augment the factual record from the hearing to show an Ohio court that the Division reached its decision in error.

20

The Division will be sitting in judgment of its own demand. Although he will not be overseeing the hearing, Defendant Hardy, as Superintendent of the Division, will determine the hearing's ultimate outcome in terms of the decisions that are reached, including those that implicate Plaintiffs' fundamental rights. Ohio R.C. 119.09. He will also certify the factual record should Plaintiffs be forced to defend their fundamental rights in the Ohio courts. Ohio R.C. 119.12(J). Thereafter, under Ohio law, Plaintiffs may not supplement the record Defendant Hardy certifies from the hearing because the Ohio Revised Code limits Plaintiffs' ability to supplement the hearing record. Ohio R.C. 119.12(L).

As a matter of facial infirmity, the UFA and the administrative procedures in Chapter 119 of the Ohio Revised Code may be inadequate to protect similarly situated parties from being able to discover the basis for a potential taking by Ohio. Notwithstanding this potential facial infirmity, Defendants have applied Ohio law to deprive Plaintiffs of their Federal due process rights. Defendants are preventing Plaintiffs from discovering information and documents that form the basis for Defendants' findings and demand. Procedural due process precedents include Plaintiffs' right to develop a factual record based on access to evidence that could be used against Plaintiffs so that they can prepare for the hearing and introduce rebuttal evidence at the hearing. Intervention by the Court at this stage is the only way to ensure that Plaintiffs have relevant evidence related to their Fifth Amendment rights introduced at the hearing and certified as facts that can be considered by the Ohio courts if Plaintiffs appeal the Division's decision at the hearing.

To ensure that Plaintiffs' due process rights are protected, Plaintiffs seek orders from this Court enjoining Defendants from further violating their due process rights as set forth below.

## THE PARTIES

1.     All of the Plaintiff entities identified in the case caption are plaintiffs in this proceeding. Plaintiff ClubCorp Holdings, Inc. is referred to herein as "ClubCorp" and the remaining plaintiff entities are referred to as the "Clubs." ClubCorp and the Clubs are collectively referred to as the Plaintiffs.

2.     The Ohio Department of Commerce is the State of Ohio's chief regulatory agency with a focus on consumer protection. The Division of Unclaimed Funds is a division that sits within the Ohio Department of Commerce. The purpose of the Division is to "reunite[ ] Ohioans with their hard-earned but forgotten money." (*See*, https://com.ohio.gov/divisions-and-programs/unclaimed-funds/about-unclaimed-funds.)

3.     Plaintiffs bring this action against the Division; against Hardy in his individual capacity and in his official capacity as Superintendent of the Division; against Lister in her individual capacity and in her official capacity as Legal Counsel for the Division; against Gladden in his individual capacity and in his official capacity as Compliance Manager for the Division; and against ASUS and Katz, who are agents and contract auditors of the Division. The Division, Hardy, Lister, Gladden, ASUS, and Katz are collectively referred to herein as "Defendants."

4.     At all times relevant to this action, Hardy is responsible to direct and supervise Lister, Gladden, ASUS, and Katz and the employees and agents of the Division.

5.     ASUS is a Florida limited liability company that provides unclaimed property auditing services throughout the United States.

6. The UFA allows the Division to conduct an audit of a business through the use of the Division's own auditors, or through the use of third-party "contract auditors." OAC 1301:10-3-04(A).

7. Pursuant to OAC 1301:10-3-04(A), the Division engaged ASUS to serve as a contract auditor for the Audit.

8. The OAC specifies certain requirements that contract auditors must comply with. Among other things, "contract auditors [must], certify that they are knowledgeable of Chapter 169 of the Revised Code, relevant United States and Ohio supreme court rulings, generally accepted accounting principles (GAAP), generally accepted auditing standards (GAAS), and any relevant examination/auditing procedures promulgated pursuant to section 169.09 of the Revised Code, as they relate to the identification and collection of unclaimed funds from holders." OAC 1301:10-3-04(A).

9. The Division delegated several of its functions to ASUS and Katz and is responsible for controlling their actions.

10. Pursuant to the Contract for Audit Services between the Division and ASUS (the "ASUS Engagement Agreement"), ASUS agreed to be compensated for its work on a contingency fee basis and receives a percentage of any funds that the Division collects as a result of ASUS's work. (ASUS Engagement Agreement, Section 5.1.)

11. A true and accurate copy of the ASUS Engagement Agreement is attached as Exhibit A and incorporated herein by reference.

12. By its very nature, this payment arrangement incentivizes ASUS and Katz to characterize Plaintiffs as "holders" of unclaimed funds and motivates ASUS and Katz to maximize the amount of unclaimed property Plaintiffs hold.

## JURISDICTION AND VENUE

13.     This is a civil action brought pursuant to 42 U.S.C. § 1983 seeking injunctive and declaratory relief against Defendants in order to enjoin ongoing violations of the Fourteenth Amendment of the United States Constitution.

14.     This Court has original jurisdiction over the subject matter of this Complaint under 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal questions.

15.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) because, as set forth below, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## PLAINTIFFS' PROPERTY INTEREST ARISES FROM STATE LAW

16.     ClubCorp's subsidiaries own and operate golf and country clubs, city clubs, and sports clubs around the country.

17.     In the past, when an individual or entity joined a club in the ClubCorp network, that club would sometimes require the applicant to pay a refundable initiation deposit to become a member. Not all memberships, however, required the payment of an initiation deposit. Some clubs instead required the payment of a nonrefundable initiation fee, and some clubs may have not required any payment to join other than monthly dues.

18.     The relationship between the member and the club, and whether and when the club was required to refund the initiation deposit, is generally governed by the membership contract between the club and the member, which includes that club's membership bylaws.

19.     ClubCorp's subsidiaries have bought, sold, and built clubs throughout the country over the last several decades in diverse markets and under varying terms. As a result, there is not a

uniform membership contract or set of membership bylaws that all clubs have used. There are well over 100 different contracts, each containing different terms.  Those contracts, the member files, and club membership bylaws govern the relationship between the clubs and the members with respect to the fees to join, including the initiation deposits where applicable.

20.     The initiation deposits made by depositors with a last-known address in Ohio, regardless of whether they were deposited with clubs in Ohio or clubs outside of Ohio (the "Deposits"), were the subject of the Audit.

21.     Plaintiffs maintain that the Deposits are not subject to the UFA. Plaintiffs further maintain that Defendants cannot prove that the Deposits in the amount of $7,997,377.76 are unclaimed funds under Ohio law. Defendants, on the other hand, contend that the Deposits are the property of 12,277 depositors and $7,997,377.76 should be remitted to the Division under the UFA.

22.     The State's interest, if any, is determined by the statutory definition of unclaimed property.

23.     Under the UFA, a party who possesses money belonging to another may be required to remit that money to the State of Ohio. To determine whether a party is a "holder" of "unclaimed funds," the Division has the burden of proof and must establish, among other things, that a party falls within the statutory definition of "holder," as codified in Ohio R.C. 169.01; that the funds held by that party fall within the statutory definition of "unclaimed funds," as codified in Ohio R.C. 169.02; and that the funds do not fall within any exemptions (*see, e.g.,* Ohio R.C. 169.01(B)(2)(b)).

24.     As a matter of law, Defendants may not take the Deposits from Plaintiffs unless Defendants establish these statutory requirements for each of the 12,277 depositors.

25.     The Division must also establish the exact amount of unclaimed property each Plaintiff currently owes to each of the 12,277 depositors, that each depositor has a last known

address in Ohio (after taking into account all of the holder's books and records), and that the depositor has abandoned the funds within the parameters of Ohio R.C. 169.01(B)(1).

26.     If the Deposits are not unclaimed property under Ohio law, as between Ohio and Plaintiffs, Plaintiffs own the property. If the Division cannot satisfy its burden of proof and establish the present amount Plaintiffs owe to a depositor, as between Ohio and Plaintiffs, Plaintiffs own the property.

27.     Plaintiffs' Fifth Amendment right to not be "deprived of . . . property, without due process of law[,]" is directly impacted by Defendants' application of the UFA. As a matter of law, Defendants may not force Plaintiffs to remit any amount in excess of the amount Plaintiffs "hold" and each depositor "owns."

28.     To ensure that a party is not deprived of their property without due process of law, appropriate procedural safeguards must be in place and properly applied with respect to the administrative appeals process concerning Defendants' demand that Plaintiffs remit funds to the State of Ohio. And to ensure that Plaintiffs' due process rights are not violated, Defendants must also allow Plaintiff access to documents and potential witnesses who can provide the factual and legal basis for the Division's demand so that Plaintiffs can prepare for the Division's hearing.

## PROCEDURAL RECORD IN ADVANCE OF THE HEARING ON CLUBCORP'S PROPERTY RIGHTS

29.     The procedural record demonstrates Defendants have refused to disclose the basis for the Division's demand by not disclosing: (1) how ASUS considered any or all of Plaintiffs' records and, if ASUS did consider them, the audit process ASUS used to come to its conclusions; (2) how Katz used his judgment as an auditor; and (3) how Katz considered the legal standards enumerated in Ohio Administrative Code 1301:10-3-04(A) in coming to his factual conclusions.

Based on the record, it seems clear that Defendants intend to conduct the administrative hearing by ambush.

**A.    Defendants' Audit And Demand For Payment.**

30.    Defendants began the Audit in 2023.

31.    On February 14, 2024, Katz issued an Audit Summary Report that made a "preliminary" audit finding that ClubCorp's total unclaimed funds reporting liability is $7,997,377.76 (the "Unclaimed Funds Reporting Liability"). Although the Audit Summary Report is not clear, it may be that the Unclaimed Funds Reporting Liability is the aggregate total of the present amount Katz concluded Plaintiffs "hold" for each of 12,277 depositors.

32.    A copy of the February 14, 2024 Audit Summary Report is attached as Exhibit B and referred to herein as the "Final Report."

33.    The Final Report does not provide any explanation or analysis regarding ASUS's Unclaimed Funds Reporting Liability conclusion. The Final Report states that ASUS reviewed supporting documents "for 315 members" and asked "follow-up questions" to ClubCorp regarding "16 records[,]" but it does not state that ASUS reviewed the 12,277 Deposits at issue and concluded that each of these Deposits is unclaimed property. It appears from the Final Report that Katz concluded that Plaintiffs engaged in "remediation efforts" with no explanation of what "remediation" means, how he used his judgment in the Audit to come to that conclusion, and how that conclusion is consistent with the records he reviewed and laws that relate to those records.

34.    ClubCorp was fully transparent and cooperated with Defendants during the Audit. As ASUS stated in the Final Report, "ClubCorp has cooperated with [ASUS] throughout the

examination and has provided requested documentation to [ASUS] in a timely manner." (*See* Exhibit B).

35. On April 12, 2024, Katz issued a Closing Review letter, which instructed ClubCorp to remit the Unclaimed Funds Reporting Liability to the Division or appeal the Division's determination.

36. A copy of the Closing Review letter, without its exhibits, is attached as Exhibit C and incorporated herein by reference.

37. The Closing Review Letter has no explanation in support of the Unclaimed Funds Reporting Liability.

38. The Closing Review letter references an "Excel workbook" that "identifies the specific unclaimed properties reportable to the State[.]" That Excel workbook lists 12,277 depositors with an address in Ohio and an amount and with no explanation as to how the Audit result was reached for each depositor.

39. The only possible basis for Defendants' conclusion that these 12,277 depositors own the listed Deposits is if ASUS reviewed and analyzed the following documents as they relate to each of the 12,277 depositors:

(a) All available member files, including each depositor's contract, payment history, correspondence, and any release agreements between the member and the club, because whether the Deposits are refundable to the member is governed by the contract between that member and the club;

(b) The applicable club membership bylaws for each year, because in some instances, members may have violated club membership bylaws, thereby forfeiting their rights to the return of their Deposits; and

(c) Documents reflecting corporate memberships that were purchased on behalf of business associations (even if such Deposits were recorded in the name of an individual representative), because of the "business-to-business" exemption codified in Ohio R.C. 169.B(2), which provides that certain amounts owed by and to a business are exempt from the UFA.

**B.** **ClubCorp Appeals The Division's Demand And Seeks Documents In Support Of Defendants' Conclusion.**

40. ClubCorp appealed the Unclaimed Funds Reporting Liability on May 6, 2024.

41. In its May 6, 2024 appeal notice (the "Notice of Appeal"), ClubCorp explained that Defendants did not comply with the mandatory requirements of the UFA in ordering ClubCorp to remit the Unclaimed Funds Reporting Liability.

42. A true and accurate copy of the Notice of Appeal is attached as Exhibit D and incorporated herein by reference.

43. ClubCorp's Notice of Appeal requested that Defendants produce documents that could explain the Unclaimed Funds Reporting Liability and Defendants' conclusions. As explained below, Defendants produced some documents in response to a public records request, but they did not provide an explanation of the basis for the Unclaimed Funds Reporting Liability and did not provide all requested records.

44. ClubCorp renewed its request for documents and information on June 5, 2024, in an email that specifically requested that the Division provide documents and explained that, "ClubCorp views the Division's demand for payment as extending to ClubCorp's own private property without a lawful investigation in violation of the Ohio's Constitution and Ohio Supreme Court precedent. *See Sogg v. Zurz*, 121 Ohio St.3d 449, 452 (2009) (*citing, Cotter v. Doty*, 5 Ohio 393, 398 (1832) ("No man ought to be deprived of his property by forfeiture without having a legal investigation.") ." (*See* Exhibit E (June 5, 2024 email to Hardy).)

45. Defendants did not provide documents or information in response to this request.

**C.      ClubCorp Issues A Public Records Request To The Division.**

46.      On July 18, 2024, ClubCorp issued a public records request to the Division pursuant to Ohio R.C. 149.43 (the "Public Records Request") to obtain documents and information that might explain the basis for the Unclaimed Funds Reporting Liability.

47.      A true and accurate copy of the Public Records Request is attached as Exhibit F and incorporated by reference.

48.      In the Public Records Request, ClubCorp asked for copies of, among other documents, all work papers, position statements, memoranda, and other documents used, referenced, or relied on when preparing the Final Report (the "Work Papers").

49.      The Division provided some records that it possessed. However, the Division did not fully respond to the Public Records Request and did not produce any of the Work Papers. Instead, Lister directed ClubCorp to obtain the Work Papers directly from Katz. A true and accurate copy of Lister's correspondence to ClubCorp is attached as Exhibit G and incorporated herein by reference.

50.      ClubCorp contacted Katz and requested production of the Work Papers. A true and accurate copy of ClubCorp's correspondence to Katz is attached as Exhibit H and incorporated herein by reference.

51.      Katz never responded.

52.      Despite ClubCorp's repeated attempts to obtain the Work Papers, ClubCorp still does not have them and, as a result, was forced to file a Complaint for Writ of Mandamus pursuant to Ohio R.C. 149.43 with the Ohio Supreme Court. *See The State of Ohio ex rel. ClubCorp Holdings, Inc. v. The Ohio Department of Commerce, Division of Unclaimed Funds*, Case No. 2025-0107 (the "Public Records Case").

53.     On January 28, 2025, the Ohio Supreme Court referred the Public Records Case to mediation. At this time, Plaintiffs do not oppose the Ohio Supreme Court's referral to mediation.

**D.     ClubCorp Seeks Information And Documents Before And After The Appeal Meeting.**

54.     An appeal meeting (the "Appeal Meeting") was held on September 10, 2024 pursuant to Ohio Administrative Code 1301:10-3-04(K).

55.     The purpose of the Appeal Meeting was to "reach mutually agreeable findings" and explore whether the parties could reach a resolution. OAC 1301:10-3-04(K). Plaintiffs understood that the Appeal Meeting was a form of alternative dispute resolution, and as such, discussions and information exchanged in connection with the Appeal Meeting are confidential.

56.     Prior to the Appeal Meeting, ClubCorp sent a letter dated September 4, 2024 to Defendants that identified several questions it had related to the Unclaimed Funds Reporting Liability and the Closing Review letter.

57.     In its September 4 letter, ClubCorp requested transparency regarding the factual and legal bases for the Unclaimed Funds Reporting Liability and Defendants' conclusions and explained that it was necessary to understand the basis for the Unclaimed Funds Reporting Liability in order to: (1) respond to the demand to remit payment; and (2) engage in meaningful discussions regarding resolution. To that end, ClubCorp asked that the Division address four foundational questions that would shed light on the basis for the Unclaimed Funds Reporting Liability and Defendants' conclusions.

58.     The September 4 letter is not attached to the Complaint because it is a confidential settlement communication.

59. Defendants and Donald Scheetz, who conducted the Appeal Meeting on behalf of the Division, did not answer any of these questions prior to or during the Appeal Meeting.

60. After the Appeal Meeting, on September 17, 2024, ClubCorp provided additional information in support of its appeal and reminded the Division that it has the burden of proof with respect to every factual and legal issue relevant to each of the Deposits in its demand.

61. The September 17 letter is not attached to the Complaint because it is a confidential settlement communication.

62. After the Appeal Meeting, ASUS and Katz provided a one-page summary of "ASUS Audit Key Dates" to the Division. This summary is not attached to the Complaint because of the confidential nature of the Appeal Meeting. This summary, however, does not provide the documents supporting ASUS's conclusions in the summary.

63. On October 17, 2024, Scheetz issued a State Administrator Decision. The State Administrator Decision did not address any of the questions or issues raised by ClubCorp during the Appeal Meeting or in ClubCorp's letters and simply stated—without analysis or explanation—that ClubCorp's "bases for appeal were not sufficiently supported or developed."

64. A copy of the October 17, 2024 State Administrator Decision is attached as Exhibit I and incorporated herein.

65. The State Administrator Decision concluded by noting that ClubCorp should contact Katz "with any further questions."

66. On November 27, 2024, ClubCorp contacted Katz and asked for documents that formed the basis for Defendants' findings. (*See* Exhibit H.) Katz never responded.

67. ClubCorp appealed the State Administrator Decision, and on November 19, 2024, the Division issued a notice scheduling the administrative hearing (the "Hearing") for January

23, 2025. Thereafter, on January 2, 2025, the Division issued a second notice re-scheduling the Hearing for January 30, 2025.

        **E.**        **ClubCorp Requests The Issuance Of A Subpoena.**

      68.     Because Defendants ignored ClubCorp's repeated requests to provide an explanation in support of Defendants' conclusions, and because Defendants refuse to produce the Work Papers created and used by ASUS, ClubCorp requested, pursuant to Ohio R.C. 119.09, that the Division issue a subpoena to Katz ordering him to appear for deposition and produce documents (the "Subpoena").

      69.     A true and accurate copy of ClubCorp's request for the issuance of the Subpoena is attached as Exhibit J and incorporated by reference.

      70.     Ohio R.C. 119.09 requires that the Division issue a subpoena "upon the request of any party." Despite this mandate, Defendants refused to issue the Subpoena and stated that discovery depositions are not permitted prior to administrative hearings.

      71.     ClubCorp, however, asked that the Subpoena be issued for purposes of conducting a trial deposition of Katz. And regardless of whether the deposition were conducted as a discovery deposition or a trial deposition, ClubCorp is entitled to understand the basis for Defendants' decision to meaningfully and effectively prepare for the Hearing and cross-examine any testimony at the Hearing.

      72.     ClubCorp made a second request on December 31, 2024 that the Division issue the Subpoena, and in that request, explained how proceeding with the Hearing without the Work Papers, without taking Katz's deposition, and without understanding the basis for the Unclaimed Funds Reporting Liability violated its due process rights.

73.     A true and accurate copy of the December 31, 2024 letter is attached as Exhibit K and incorporated herein.

74.     Defendants refused to issue the Subpoena and stated instead that they are willing to issue a subpoena to compel Katz's attendance at the Hearing. (*See* January 9, 2025 correspondence, attached as Exhibit L.)

75.     Based on the U.S. Supreme Court precedents, making Katz available at the hearing is insufficient to protect Plaintiffs from violations of its constitutional right to procedural due process, because it does not allow Plaintiffs an opportunity to examine and understand how ASUS concluded that Deposits from 12,277 depositors fall within the definition of unclaimed funds under Ohio law. Furthermore, questioning Katz during the Hearing, without having an opportunity to take his deposition in advance of the Hearing, denies Plaintiffs the opportunity to understand and test the basis for Katz's conclusions and to prepare rebuttal testimony in response to Katz's testimony, analysis, conclusions, and findings in advance of the Hearing.

**F.     Hearing Officer Continues Administrative Hearing.**

76.     Because Defendants have not provided the information Plaintiffs need to proceed with the Hearing, Plaintiffs requested that the Hearing be continued. During a conference on January 23, 2025, the Hearing Officer agreed to postpone the hearing, however, Defendants still refused to provide the documents and information requested.

77.     In fact, during the conference on January 23, 2025, counsel for the Division stated he might designate as Hearing exhibits some of the documents being withheld from production to Plaintiffs. Counsel's statement demonstrates that the Division intends to hold a hearing concerning Plaintiffs' fundamental property right by surprise. This utter disregard for Plaintiffs' due process

rights demonstrates the lengths that Defendants will go to unfairly shape the record at the Hearing while denying Plaintiffs the ability to meaningfully participate.

78.     Although the Hearing was continued, Defendants still refuse to provide an explanation of the bases in fact and law for their conclusions and the Unclaimed Funds Reporting Liability, refuse to provide the information and documents requested by Plaintiffs, and refuse to make Katz available to be deposed.

## DEFENDANTS ARE CAUSING IRREPERABLE HARM TO PLAINTIFFS BECAUSE PLAINTIFFS CANNOT PREPARE SUFFICIENTLY FOR THE HEARING WITHOUT THE REQUESTED INFORMATION AND WILL BE FORECLOSED FROM DEVELOPING THE RECORD IN THE ADMINISTRATIVE PROCEEDING

79.     As a matter of procedural due process, Defendants may not withhold evidence from Plaintiffs. Plaintiffs' procedural due process right includes the right to know what evidence the Division intends to use at the Hearing that it is conducting.

80.     In the Notice of Appeal and September 4 letter, Plaintiffs made it clear that they dispute that the Unclaimed Funds Reporting Liability is unclaimed property. Defendants' obstruction of Plaintiffs' ability to access records and depose Katz denies Plaintiffs of the due process owed to them under the 14th Amendment of the U.S. Constitution.

81.     Defendants' ongoing refusal to provide Plaintiffs with this information is an attempt to insulate the record and shield themselves from challenge, so that the record that is created at the Hearing does not contain Plaintiffs' responsive evidence and objections.

82.     Without reviewing and analyzing the Work Papers and deposing Katz, Plaintiffs do not know what judgment Katz used in coming to his conclusions. To protect Plaintiffs' rights, Plaintiffs must be able to question Katz on a variety of factual and legal questions concerning the judgment that he used, including whether he exercised his judgment to reach a conclusion regarding the deposits that most benefited him in advance of the Hearing.

83.     Notwithstanding that Plaintiffs have the option to appeal an adverse decision from the Hearing to the Ohio Court of Common Pleas, irreparable harm will have taken place if the Hearing proceeds, because Ohio law deprives Plaintiffs of an opportunity to conduct discovery and develop the record in an appeal. Pursuant to Ohio R.C. 119.12(L), the record in an appeal is limited to the record certified by the Division after the Hearing. Under this statute, the record can only be supplemented if permitted by the court, and if the "additional evidence is newly discovered and could not with reasonable diligence have been ascertained prior to the hearing before the agency." Ohio R.C. 119.12(L).

84.     The administrative appeal process began when Plaintiffs filed their Notice of Appeal. At that point, their right to procedural due process vested. If Plaintiffs are forced to proceed without receiving the requested documents and being allowed to take the requested deposition in advance of the Hearing, Plaintiffs will be deprived of their only opportunity to develop the record in this matter. In this event, it will be by design that Plaintiffs will be put in the position that the bases for their appeal are not sufficiently supported or developed.

85.     The Sixth Circuit Court of Appeals has explained that "[a]n essential principle of due process is that a deprivation of property 'be preceded by notice and opportunity for a hearing appropriate to the nature of the case.'" *Morrison v. Warren*, 375 F.3d 468, 475 (6th Cir. 2004) citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). "At the least, this requires notice of the charges and an opportunity to view and contest the evidence supporting them." *Id*. citing *Cleveland Board of Education*, 470 U.S. at 546.

86.     The U.S. Supreme Court has made clear that, one "relatively immutable" principle of due process is that "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the

Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." *Greene v. McElroy*, 360 U.S. 474, 496 (1959). "This immutable principle applies to cases where facts have been withheld from an entity during an administrative proceeding." *Royal Brush Manufacturing, Inc. v. United States*, 75 F.4th 1250, 1258 (Fed. Cir. 2023) citing *Green*, 360 U.S. 474 at 497, *Ramirez v. Dep't of Homeland Sec.*, 975 F.3d 1342, 1349–53 (Fed. Cir. 2020); *Doty v. United States*, 53 F.3d 1244, 1251 (Fed. Cir. 1995) ("The agency's ... withholding of the evidence on which [it] purported to rely ... w[as] ... egregiously removed from the fairness required of an agency in its administrative responsibilities ...."). In administrative proceedings, "due process 'includes the right to know what evidence is being used against one.'" *Id*. at 1258 citing *Robbins v. U.S. R.R. Ret. Bd.*, 594 F.2d 448, 452 (5th Cir. 1979).

87.     Three factors that must be considered when analyzing whether sufficient due process has been provided: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Doe v. Miami University,* 882 F.3d 579, 600 (6th Cir. 2018) citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

88.     Here, the "private interest that will be affected by the official action" is a taking in contravention of Plaintiffs' Fifth Amendment rights. The "risk of an erroneous deprivation of such interest through the procedures used" is also high, because (1) the Audit fails to articulate the legal and factual factors underlying the conclusions concerning each of the 12,277 depositors; (2) as demonstrated by the State Administrator Decision, Defendants are unable to balance the legal and factual issues that need to be considered; and (3) ASUS's contract with the Division

creates an incentive to maximize the amount of unclaimed property, notwithstanding that such property is owned by Plaintiffs. All of these facts create two risks: (1) administrative adjudication by ambush; and (2) the creation of an incomplete and inaccurate factual record to facilitate a taking of Plaintiffs' property. With respect to the third factor, the Division will experience only "fiscal and administrative burdens" because they are simply being ordered to provide the Work Papers and make Katz available for a deposition prior to the Hearing (which they are already required to do under Ohio law) so that Plaintiffs can understand the basis for the Audit, create its own record to avoid an erroneous administrative decision, and preserve its rights to demonstrate that the administrative decision is not supported by probative or reliable evidence. Finally, the government's interest is served if Defendants are enjoined from further disregarding their due process obligations, because requiring ASUS to provide the Work Papers and making Katz available for a deposition prior to the Hearing will not interfere with the administration of Ohio's unclaimed property laws.

89.     As a result of the foregoing, there is a substantial risk of continued harm to Plaintiffs. Plaintiffs therefore seek an order from this Court enjoining Defendants from further violating Plaintiffs' due process rights and ordering Defendants to provide the Work Papers, to provide all information and documents related to the Audit and the Unclaimed Funds Reporting Liability, and to make Katz available for deposition sufficiently in advance of the Hearing so that Plaintiffs can prepare and put on their case.

## COUNT ONE
## DECLARATORY JUDGMENT THAT
## THE DIVISION MAY NOT MAKE A DEMAND FOR UNCLAIMED PROPERTY IN EXCESS OF THE CERTAIN AND LIQUIDATED CURRENT AMOUNT OWNED BY AN OWNER UNDER THE FIFTH AMENDMENT
## 28 U.S.C. § 2201

90.     Plaintiffs incorporate all of the allegations set forth above as if fully rewritten herein.

91.     Before the Division can order a party to remit property to the State, the Division must prove that a party is a "holder" of "unclaimed funds" as those terms are defined in Ohio R.C. 169.01 and Ohio R.C. 169.02, respectively.

92.     When establishing that property falls within the statutory definition of "unclaimed funds" under Ohio R.C. 169.02, the Division must prove the certain and liquidated amount owned by an owner of the "unclaimed funds."

93.     If the Division does not establish: (1) that a party is a "holder"; (2) that a party holds "unclaimed funds"; and (3) the certain and liquidated amount owned by the owner of the "unclaimed" funds," then the Division cannot order a party to remit property to the State because doing so would be in violation of that party's Fifth Amendment rights under the U.S. Constitution. In other words, ordering a party to remit property to the State without satisfying these requirements is an unconstitutional taking of property.

94.     There is a current dispute and controversy between the Division and Plaintiffs regarding the Unclaimed Funds Reporting Liability and whether the Division has satisfied its burden of proving the foregoing requirements. This dispute and controversy is appropriate for judicial determination, because the dispute relates to the legal relationship and obligations of the Division and Plaintiffs, and the Division and Plaintiffs have adverse legal interests.

95.     Defendants do not believe the Division is required to prove the foregoing requirements.

96.     Plaintiffs therefore seek an order from the Court declaring that: (1) the Division cannot make a demand for unclaimed funds unless the Division establishes: (a) that a party is a "holder"; (b) that a party holds "unclaimed funds"; (c) in a certain and liquidated amount; and (2) that the Division engages in an unlawful taking of property without due process in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution if the foregoing requirements are not established.

## COUNT TWO
## FOURTEENTH AMENDMENT DUE PROCESS VIOLATION
## PROCEDURAL DUE PROCESS
## (DEFENDANTS' VIOLATIONS OF DUE PROCESS)
## 42 U.S.C. § 1983

97.     Plaintiffs incorporate all of the allegations set forth above as if fully rewritten herein.

98.     The Deposits are a specific fund of money, in which the Clubs have a legitimate property interest protected by the Fifth Amendment of the U.S. Constitution.

99.     A fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.

100.    Defendants have deprived ClubCorp and the Clubs, and continue to deprive them, of their right to be heard at a meaningful time and in a meaningful manner.

101.    As set forth herein, Defendants failed to comply with procedural due process requirements by ignoring ClubCorp's request for issuance of the Subpoena, rejecting Plaintiffs' request for clarification, information, and documents that would assist them in preparing for the

Hearing, and denying Plaintiffs' request for an explanation as to how the Unclaimed Funds Reporting Liability was determined.

102. Defendants' actions are depriving ClubCorp and the Clubs of the ability to prepare for the Hearing and are causing material prejudice.

103. ClubCorp's and the Clubs' only opportunity to establish a record, object to the Final Report and the Unclaimed Funds Reporting Liability, and address the Division's demand is at the Hearing, but they cannot adequately address or respond to Defendants' position without understanding the basis for their findings.

104. All of Defendants' actions, and their lack of compliance with federal due process requirements and the UFA, violate Plaintiffs' constitutional right to procedural due process, which procedural due process is required before being deprived of a property interest.

105. Defendants are required to provide fair procedures, which did not occur here.

106. By demanding that ClubCorp and the Clubs remit the Unclaimed Funds Reporting Liability to the Division without first complying with the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, Defendants are depriving ClubCorp and the Clubs of their constitutional rights.

107. ClubCorp and the Clubs will suffer material prejudice if they are forced to proceed with the Hearing and therefore respectfully request that the Court issue an order that requires Defendants to provide the Work Papers, to provide all information and documents related to the Audit and the Unclaimed Funds Reporting Liability, and to make Katz available for deposition. Plaintiffs also request that the Court issue an order enjoining the Hearing from proceeding until Defendants have complied with the foregoing sufficiently in advance of the Hearing in order to allow Defendants to prepare for the Hearing.

## COUNT THREE
## DECLARATORY JUDGMENT THAT ASUS IS A STATE ACTOR
### 28 U.S.C. § 2201

108.    Plaintiffs incorporate all of the allegations set forth above as if fully rewritten herein.

109.    Ohio Administrative Code 1301:10-3-04 allows the Division to select a "contract auditor" for "the sole purpose of examining the records of holders, determining compliance with Chapter 169 of the Revised Code, and collecting, taking possession of, and remitting to the department's division of unclaimed funds, in a timely manner, the amounts found and defined as unclaimed."

110.    In addition, OAC 1301:10-3-04(A) states: "Said persons, hereinafter referred to as contract auditors, certify that they are knowledgeable of Chapter 169 of the Revised Code, relevant United States and Ohio supreme court rulings, generally accepted accounting principles (GAAP), generally accepted auditing standards (GAAS), and any relevant examination/auditing procedures promulgated pursuant to section 169.09 of the Revised Code, as they relate to the identification and collection of unclaimed funds from holders."

111.    The Division engaged ASUS as a "contract auditor" to conduct the Audit, delegated its functions to ASUS, and controlled ASUS's actions.

112.    As a result, ASUS is acting on behalf of the Division and is an agent of the Division.

113.    The Division directed Plaintiffs to obtain documents directly from ASUS and, in the State Administrator Decision, directed Plaintiffs to contact Katz "with any further questions."

114.    The ASUS Engagement Agreement, however, states that ASUS shall not "be considered as [an] agent[ ]" of the Division. *See* Exhibit A, Section 4.2 of ASUS Engagement Agreement.

115. This provision of the ASUS Engagement Agreement is contrary to the actions of the Division in treating ASUS as its agent and is contrary to the language of the Ohio Administrative Code, which permits ASUS to act on behalf and at the direction of the Division.

116. As a result, there is a justiciable controversy between the Division and Plaintiffs regarding whether ASUS is a state actor and agent of the Division. This dispute and controversy is appropriate for judicial determination, because this dispute relates to the legal relationship and obligations of the Division and ASUS, and how those obligations impact Plaintiffs' rights.

117. Plaintiffs therefore respectfully request that the Court issue an order declaring that ASUS is a state actor and agent of the Division.

## COUNT FOUR
## DECLARATORY JUDGMENT THAT ENGAGEMENT OF CONTRACT AUDITORS ON A CONTIGENCY FEE BASIS IS UNCONSITUTIONAL
## 28 U.S.C. § 2201

118. Plaintiffs incorporate all of the allegations set forth above as if fully rewritten herein.

119. It is a violation of due process to allow ASUS and Katz to perform the Audit, because, for all of the reasons noted above, they are biased decision-makers.

120. To comply with the Due Process Clause of the Fourteenth Amendment, Defendants are required to provide fair procedures and an impartial decisionmaker. ASUS and Katz are not impartial decision-makers and are financially motivated to conclude that property falls within the definition of "unclaimed funds" under the UFA.

121. Ohio Administrative Code 1301.10-3-04 provides that the Division "may compensate a contract auditor on a contingency fee basis when the state of Ohio has joined in an involuntary audit initiated by another state, regardless of whether the holder is incorporated in Ohio, or has its principal place of business or records within Ohio."

122.     Ohio Administrative Code 1301.10-3-04 is unconstitutional because it permits the State to engage contract auditors on a contingency-fee basis, and by the very nature of that payment arrangement, such contract auditors are not impartial and have an interest in concluding that property falls within the definition of unclaimed funds in violation of Ohio law.

123.     An actual controversy exists among the parties because Defendants have no concerns about the impact of their contingency fee payment agreement on Plaintiffs' due process rights and intend to proceed with the Hearing without providing an explanation for or support of the Unclaimed Funds Reporting Liability. This dispute and controversy is appropriate for judicial determination, because the dispute relates to the legal relationship and obligations of the Division, ASUS, and Katz, and how those obligations impact Plaintiffs' rights.

124.     As a result, Plaintiffs seek an order from this Court declaring that the OAC 1301.10-3-04 is unconstitutional because it permits the engagement of an impartial decision-maker in violation of a party's due process rights.

**COUNT FIVE**
**FOURTEENTH AMENDMENT DUE PROCESS VIOLATION**
**PROCEDURAL DUE PROCESS**
**(CONFLICT OF INTEREST)**
**42 U.S.C. § 1983**

125.     Plaintiffs incorporate all of the allegations set forth above as if fully rewritten herein.

126.     Pursuant to OAC 1301:10-3-04(A), the Division delegated its authority to perform the Audit to ASUS and Katz. At all times relevant to this action, ASUS and Katz were acting on behalf of the Division.

127.     ASUS and Katz concluded that the Clubs should remit the Unclaimed Funds Reporting Liability to the Division.

128. Upon information and belief, the Division completely deferred to ASUS and Katz and did not challenge or question their work or findings.

129. It is a violation of due process to allow ASUS and Katz to perform the Audit, because, as a result of their contingency fee payment arrangement with the Division, they are biased decisionmakers.

130. By its very nature, this payment arrangement incentivizes ASUS and Katz to determine that parties are "holders" of unclaimed funds and motivates them to maximize the amount of unclaimed property Plaintiffs hold in violation of state law.

131. Defendants are required to provide fair procedures and an impartial decisionmaker, which did not occur here.

132. As a result, Plaintiffs seek an order from this Court concluding that the Division's engagement of ASUS to conduct the Audit is a violation of Plaintiffs' due process rights and enjoining ASUS and Katz from further acting as a contract auditor for the Division.

<u>COUNT SIX</u>
**FOURTEENTH AMENDMENT DUE PROCESS VIOLATION
SUBSTANTIVE DUE PROCESS
42 U.S.C. § 1983**

133. Plaintiffs incorporate all of the allegations set forth above as if fully rewritten herein.

134. Defendants' actions have deprived ClubCorp and the Clubs of the constitutional guarantee of due process and shock the conscience.

135. Defendants' actions shock the conscience because Defendants are aware of their statutory obligations with respect to federal law and the Ohio Revised Code and Administrative Code and have ignored them, despite repeated requests for compliance and clarification. The fact that Defendants are withholding information and documents, yet admitting that at the time of the

Hearing they will cherry-pick which unproduced documents to use, and are moving forward with a record-setting Hearing regarding the Unclaimed Funds Reporting Liability, is disturbing and extremely prejudicial.

136. ClubCorp and the Clubs will suffer material prejudice if they are forced to proceed with the Hearing and therefore respectfully request that the Court issue an order that requires Defendants to provide the Work Papers, to provide all information and documents related to the Audit and the Unclaimed Funds Reporting Liability, and to make Katz available for deposition. Plaintiffs also request that the Court issue an order enjoining the Hearing from proceeding until Defendants have complied with the foregoing sufficiently in advance of the Hearing in order to allow Defendants to prepare for the Hearing.

## COUNT SEVEN
### DECLARATORY JUDGMENT THAT DEFENDANTS' APPLICATION OF OHIO R.C. 119.09 IS UNCONSTITUTIONAL
### 28 U.S.C. § 2201

137. Plaintiffs incorporate all of the allegations set forth above as if fully rewritten herein.

138. Plaintiffs requested that Defendants issue the Subpoena to obtain information and documents that will help them understand the basis for the Unclaimed Funds Reporting Liability and that will help them prepare for the Hearing. Defendants refuse to issue the Subpoena requested by ClubCorp.

139. Defendants' refusal to issue the Subpoena is in direct violation of Ohio R.C. 119.09 and Plaintiffs' due process rights under the Fourteenth Amendment.

140. Ohio R.C. 119.09 explicitly permits the taking of depositions and requests for documents and states:

> For the purpose of conducting any adjudication hearing . . . the agency may require the attendance of such witnesses and the production of such books, records, and papers as it desires, and **it may take the depositions of witnesses residing within or without the state in the same manner as is prescribed by law for the taking of depositions in civil actions in the court of common pleas, and for that purpose the agency may, and upon the request of any party … shall**, issue a subpoena for any witness or a subpoena duces tecum to compel the production of any books, records, or papers . . . ." (Emphasis added.)

141.     This statute requires the issuance of a subpoena by the Division "upon the request of any party." It does not condition the issuance of a subpoena on a witness's availability for an adjudicatory hearing and this code section is clear that the Division "shall" issue the subpoena when requested.

142.     As applied by Defendants here, R.C. 119.09 is unconstitutional because it deprives Plaintiffs of their due process rights and there is an imminent threat of a property taking if the hearing proceeds.

143.     Because there is a dispute and controversy among Plaintiffs and Defendants regarding application of Ohio R.C. 119.09, it is appropriate for the Court to declare the rights and legal relations among the parties with respect to Ohio R.C. 119.09. This dispute and controversy is appropriate for judicial determination, because the dispute relates to the legal relationship and obligations of the Division, and the rights of Plaintiffs, and the Division and Plaintiffs have adverse legal interests.

144.     Plaintiffs respectfully request that the Court issue a judgment declaring that Ohio R.C. 119.09 permits the issuance of the Subpoena and declaring that Defendants' application of Ohio R.C. 119.09 is unconstitutional.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court enter an order that:

1.      Requires Defendants to provide: (a) the Work Papers related to the Audit and the Division's demand; and (b) all information and documents related to Plaintiffs;

2.      Requires Defendants to make Katz available for deposition, as well as any other witnesses' whose testimony might be necessary for Plaintiffs to prepare for the Hearing;

3.      Enjoins the Hearing from proceeding until Defendants have complied with the foregoing sufficiently in advance of the Hearing in order to allow Plaintiffs to prepare for the Hearing;

4.      Declares that the Division's engagement of ASUS is a violation of Plaintiffs' due process rights and enjoins ASUS and Katz from further acting as a contract auditor for the Division;

5.      Declares that Ohio R.C. 119.09 permits the issuance of the Subpoena and declares that Defendants' application of Ohio R.C. 119.09 is unconstitutional; and

6.      Awards Plaintiffs their attorney fees and costs and such other relief, legal or equitable, as may be proper and necessary and to which they may be entitled.

Dated:  January 31, 2025                    Respectfully submitted,

*/s/ Julie A. Crocker*
Julie A. Crocker (0081231)
jcrocker@taftlaw.com
Taft Stettinius & Hollister LLP
200 Public Square, Suite 3500
Cleveland, OH  44114
(216) 241-2838 (telephone)
(216) 241-3707 (facsimile)

David K. Stein (0042290)
dstein@taftlaw.com
Taft Stettinius & Hollister LLP
41 South High Street, Suite 1800
Columbus, Ohio 43215
(614) 334-6105 (telephone)
(614) 221-2007 ((facsimile)

*Attorneys for Plaintiffs*